Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 400 - 1, 5 | **DATE** | 4/16/2004 |
| **CASE TITLE** | UNITED STATES vs. COZZO, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Enter memorandum opinion and order motions in limine.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| ✓ | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 28 2004 | |
| | Notified counsel by telephone. | | date docketed | 150 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 02 CR 400 |
| | Judge James B. Zagel |
| PHILLIP J. COZZO et al., | |
| Defendants. | |



## MEMORANDUM OPINION AND ORDER

Defendants Phillip Cozzo and Frank Useni have made several evidentiary motions *in limine* pertaining to the Government's intended use of alleged coconspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). Rule 801(d)(2)(E) provides that a "statement" is not hearsay if it is "offered against a party" and is a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy." The admission of a coconspirator statement against a defendant is proper where the government establishes by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were members of that particular conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir. 1999). I now address the Defendants' objections to the use of coconspirator statements. In doing so, I assume, *arguendo*, that all participants in these conversations are coconspirators.



Surveillance Tape No. 80

Defendants object to the use of a portion of a surveillance tape involving a conversation between testifying codefendant Rosario DiMarco and Cozzo on July 2, 1996.[1] Specifically, Defendants object to the portion of the tape corresponding to the tape transcript from line 47, page 1 to line 18, page 2. Defendants argue that even if the participants are discussing some conspiracy, it is not clear that they are discussing the alleged conspiracy at issue here. *See, e.g., United States v. Piper*, 298 F.3d 47, 54-55 (1st Cir. 2002) (holding that district court erred in admitting tape-recorded conversation between an alleged coconspirator and a third party because the conversation was most accurately characterized as an attempt to persuade a third party to purchase drugs from a source other than the defendant and, thus, the conversation was not in furtherance of the charged conspiracy involving the coconspirator's agreement to distribute drugs supplied by defendant). Whether this is true depends on what DiMarco testifies to regarding the conversation in court. If he testifies that they were discussing the present conspiracy, then the portion is admissible. On the other hand, if he testifies that they were discussing a separate issue, then the portion is not admissible. Accordingly, I reserve judgment on this objection until then.

Testimony of Donna Dombrowski

Defendants object to witness Donna Dombrowski testifying that unindicted and deceased coconspirator Fred Bigham told her than he, codefendant William Shlifka, and Cozzo were taking a piece of the proceeds from the operation of the Grand Palace Bingo Hall. While the testimony regarding Bigham himself is admissible, it is questionable whether the testimony

---

[1] My presumption is that DiMarco will testify that Cozzo is the other person on the tape.

regarding Shlifka and Cozzo is admissible because it is not clear that the statement was made "in furtherance" of the alleged conspiracy.

In determining whether a statement was made "in furtherance" of a conspiracy, courts look for a reasonable basis upon which to conclude that the statement furthered the conspiracy's objectives. *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance" of the conspiracy, and the statement need not have been exclusively, or even primarily, made to further the conspiracy. *Id.* Also, the statement need not be important or essential to the conspiracy; it need only be just important enough to serve some purpose to promote the conspiracy's objectives in order to be admissible. *United States v. Gajo*, 290 F.3d 922, 929 (7th Cir.), *cert. den.*, 537 U.S. 938 (2002). In general, a statement which is "part of the information flow between conspirators intended to help each perform a role" is admissible under Rule 801(d)(2)(E). *United States v. Santos*, 20 F.3d 280, 286 (7th Cir. 1994) (quoting *United States v. Johnson*, 927 F.2d 999, 1001 (7th Cir. 1991)).

Courts have found a wide range of statements to satisfy the "in furtherance" requirement. *See, e.g., United States v. Herrero*, 893 F.2d 1512, 1527-28 (7th Cir. 1990); *Garlington v. O'Leary*, 879 F.2d 277, 283-84 (7th Cir. 1989). These include statements made: (1) to identify other members of the conspiracy and their roles, *United States v. Magee*, 821 F.2d 234, 244 (5th Cir. 1987); *United States v. Roldan-Zaoata*, 916 F.2d 795, 803 (2d Cir. 1990); (2) to recruit potential coconspirators, *Shoffner*, 826 F.2d at 628; (3) to control damage to an ongoing conspiracy, *United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988); (4) to keep coconspirators advised as to the progress of the conspiracy, *United States v. Potts*, 840 F.2d 368,

3

371 (7th Cir. 1987); (5) to conceal the criminal objectives of the conspiracy, *United States v. Kaden*, 819 F.2d 813, 820 (7th Cir. 1987); *United States v. Xheka*, 704 F.2d 974, 985-86 (7th Cir. 1983); (6) to plan or to review a coconspirator's exploits, *United States v. Molt*, 772 F.2d 366, 368-69 (7th Cir. 1985); or (7) as an assurance that a coconspirator can be trusted to perform his role, *United States v. Buishas*, 791 F.2d 1310, 1315 (7th Cir. 1986). On the other hand, statements that consist of "idle chatter, narrative declarations and superfluous casual remarks" do not satisfy the "in furtherance" requirement and are inadmissible hearsay. *United States v. Johnson*, 927 F.2d 999, 1002 (7th Cir. 1991) (quotations and citation omitted).

The most difficult questions regarding admissibility of coconspirator statements involve statements in which one conspirator says that "X" defendant perpetrated some bad act or played some role in the conspiracy. The argument against admissibility in such situations is that recitations of past history arguably do not further the cause of the conspiracy and fall within the category of idle chatter.

Sometimes relating past crimes and current roles do "further" the conspiracy. One situation is when such information keeps the conspiracy intact. For example, in *United States v. Westmoreland*, 312 F.3d 302 (7th Cir. 2002), *cert. den.*, 538 U.S. 1042 (2003), a witness testified that her husband had come home covered in blood and told her that he had helped the defendant on trial bury someone who had owed the defendant money and who had "talk[ed] too much." *Id.* at 309. The Seventh Circuit held that this statement did further the conspiracy because the statement, which the witness perceived as a threat, was intended to preserve the conspiracy by frightening the witness and dissuading her from informing the authorities about the defendant's drug scheme. *Id* at 309-10.

4

There is also a line of cases involving long-lived criminal organizations in which information about participants in a conspiracy and their respective roles furthers the conspiracy. For example, in *United States v. Russo*, 302 F.3d 37 (2d Cir. 2002), *cert. den.*, *Hickey v. United States*, 537 U.S. 1112 (2003), a witness testified that he was told that the defendant on trial had become a captain within an organized crime family and that the defendant's son told him and another individual that the codefendant was "with" the family. *Id.* at 46. The Second Circuit held that these statements were in furtherance of the conspiracy because they furthered maintenance of the syndicate by giving associated persons information about its membership. *Id.* at 47.

Concerning the present statement, I am inclined to prohibit its use as to Cozzo and Shlifka. While it might be important for Dombrowski to know that Bigham, Cozzo and Shlifka are key players in the conspiracy's organization, such as in *Russo*, and while Bigham might have intended to frighten Dombrowski and dissuade her from informing the authorities about the scheme, such as in *Westmoreland*, neither of these classic scenarios seems to be the likely explanation. Rather, the more likely explanation is that because Dombrowski was helping Bigham recount the money he brought home each night before depositing a predetermined amount in the various checking accounts of posts of the veterans groups, she needed to know that there would be extra money left over after her counting. It appears that this extra money would go straight to Bigham, and hence, that is why Dombrowski's statement would be admissible against him. But the statement as it pertains to Cozzo and Shlifka is nothing more than idle chatter or past declarations. If Dombrowski was handling the skim for Cozzo and Shlifka as well as for Bigham this conclusion would be different, but it appears she was only doing so for

Bigham. Accordingly, I prohibit the use of any statement by Dombrowski regarding Bigham telling her that Cozzo and Shlifka were taking a piece of the proceeds absent any evidence that Dombrowski was handling part of the skim for Cozzo and Shlifka.

Confrontation Clause Issues

Finally, Defendants have made a general objection to the use of surveillance tapes on the grounds that their use violates the Confrontation Clause, citing *Crawford v. Washington*, 124 S.Ct. 1354 (2004). In *Crawford*, the Supreme Court held that the Sixth Amendment prevents the admission of any "testimonial" out of court statements by an unavailable witness unless there was a prior opportunity for cross-examination. However, Crawford does not alter the law relative to "nontestimonial" out of court statements, such as coconspirator statements. Such statements are not subject to the Confrontation Clause. *Id.* at 1374. Accordingly, Crawford does not provide a basis for excluding the surveillance tapes. *See, e.g., United States v. Reyes*, 2004 WL 613071, * 2 n. 4 (8th Cir. Mar 30, 2004).

ENTER:

James B. Zagel
United States District Judge

DATE: 16 April 2004